



FILED
HARRISBURG, PA

[date illegible] 2005

MA[...] [...]REA, CLERK
Per _____
          Deputy Clerk



UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | **1:CV 05-1896** |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. |
| RITE AID CORPORATION | ) ) ) | <u>COMPLAINT</u> |
| Defendant. | ) ) ) | <u>JURY TRIAL DEMAND</u> |

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of retaliation and to provide appropriate relief to Elka Faye ("Kellie") Portman who was adversely affected by such practices. As articulated with greater particularity in paragraph 7 below, the Commission alleges that Defendant Rite Aid Corporation discharged Ms. Portman in retaliation for exercising her rights under Title VII when

1

she complained that Defendant discriminated against her on the basis of her sex. Ms. Portman suffered mental and emotional distress as a result of Defendant's retaliatory actions against her.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f) and (3), ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Pennsylvania.

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, Rite Aid Corporation ("Rite Aid"), has continuously been and is now doing business in the State of Pennsylvania and the

town of Camp Hill and has continuously had at least fifteen (15) employees.

5.  At all relevant times, Defendant Employer had continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6.  More than thirty days prior to the institution of this lawsuit, Kellie Portman filed a charge with the Commission alleging violations of Title VII by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

7.  Since at least 2001, Defendant Employer has engaged in unlawful employment practices at its Camp Hill, Pennsylvania facility, in violation of section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a). These unlawful practices include, but are not limited to the following:

(a)  On March 24, 1997, Kellie Portman began working for Rite Aid as an Associate Counsel in the Real Estate Department. At the time of her hire, she was a George Washington School of Law graduate, and was licensed to practice law in Pennsylvania and New Jersey. Previous to her employment with Defendant Rite Aid, she had worked as a Law Associate for a large law firm, been a Law Professor, and worked as a Contract Attorney on a number of sophisticated commercial transactions.

(b) After Ms. Portman's hiring, the Real Estate Department eventually became comprised of approximately fifteen (15) attorneys. Her primary responsibilities in the Real Estate Department included supporting the Department, managing store leases and resolving landlord/tenant disputes.

(c) Sometime in 1999-2000, Defendant implemented a major reduction in force that resulted in the termination of several attorneys from the Real Estate Department. After the reduction in force, only six (6) attorneys were retained, including Kellie Portman.

(d) At all relevant times, Ms. Portman's performance was satisfactory, and she had never received any disciplinary action or been counseled that her performance was deficient.

(e) On or about August 28, 2001, Kellie Portman complained to Robert Sari, Senior Vice President and Deputy General Counsel, that she believed that her Supervisor, Larry Gelman, was discriminating against her on the basis of her sex. She specifically alleged that Mr. Gelman unfairly provided better pay and conditions of employment to a male Attorney, who had started his employment at the same time as Ms. Portman. Upon leaving her meeting with Sari, Ms. Portman discovered that Gelman was listening to the conversation from outside of Sari's office.

(f) Gelman then started becoming increasingly hostile toward Ms. Portman. He constantly criticized her and humiliated her in the presence of co-workers. He also began closely monitoring her arrival, departure and lunch breaks, which he had never done to her or any other attorney in the past.

(g) In September 2001, Ms. Portman met with Human Relations Director Steve Chesney to discuss her gender discrimination complaint. Chesney told her that he would set up a meeting between she and Gelman to resolve her issues.

(h) On September 24, 2001, Ms. Portman met with Chesney and Gelman to discuss her discrimination allegations. However, instead of addressing her concerns, she was provided with a written notice which listed nine (9) reasons why she was not allegedly meeting job performance standards. Ms. Portman was shocked and surprised by this sudden written notice because she had never been advised that her performance was deficient, or had she ever been counseled at any time about any of the nine listed issues.

(i) Ms. Portman immediately objected to the notice in writing and informed Defendant that she believed it was retaliatory because she had filed a sex discrimination complaint against Gelman.

(j) In January 2002, Gelman gave Ms. Portman a three (3) page single spaced negative performance review. The review asserted that her performance was

deficient. Ms. Portman was placed on six (6) month probation and was informed that she would not be receiving a raise, or even the 3% cost of living adjustment which all Rite Aid Associates receive. This was the first formal review that Ms. Portman had ever received during her five (5) year career with Defendant. Further, no other Rite Aid Attorney received a review. Kellie Portman again objected to this review as retaliatory.

(k)    Defendant Rite Aid subsequently provided Ms. Portman with a third and fourth negative performance review. After the fourth review in June 2002, Ms. Portman advised Defendant that she considered their actions retaliatory and that she would be filing a complaint with the Equal Employment Opportunity Commission.

(l)    On September 12, 2002, while at work, Ms. Portman printed out discrimination complaint documents that she was planning to forward to the EEOC. At the time she printed the documents, Linda Brown, Defendant's Office Manager, read the documents off the printer.

(m)    On September 17, 2002, approximately five (5) days after Brown saw the documents, Defendant terminated Kellie Portman.

(8)    The effect of the practices complained of in paragraph 7(a) through (m) above has been to deprive Ms. Portman of equal employment opportunities and otherwise affect her status as an employee, because she engaged in protected activity

under Title VII.

(9) The acts complained of in paragraph 7(a) through (m) were intentional.

(10) The unlawful employment practices complained of in paragraph 7(a) through (m) above were done with malice or with reckless indifference to the federally protected rights of Kellie Portman because she engaged in protected activity under Title VII.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, successors, assigns, and all persons in active concert or participation with it, from retaliating against employees who complain of such and in any other employment practice which operates to retaliate against employees.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals who complain of discrimination, which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to institute and carry out a complaint procedure which encourages employees to come forward with complaints regarding violations of its policies against discriminatory retaliation.

D.   Order Defendant Employer to institute and carry out a training program which shall promote supervisor accountability imposing on all managers and supervisory personnel a duty to actively monitor their work areas to ensure compliance with policies on non-discrimination and anti-retaliation; and requiring all managers and supervisors to report any incidents and/or complaints of retaliation of which they become aware to the department charged with handling such complaints.

E.   Order Defendant Employer to make whole Kellie Portman by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

F.   Order Defendant Employer to make whole Kellie Portman by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 7, 8, 9 and 10 above, including but not limited to out-of-pocket losses in amounts to be determined at trial.

G.   Order Defendant Employer to make whole Kellie Portman by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 7, 8, 9 and 10 above, including pain and suffering, humiliation, embarrassment, and loss of life's pleasures, in amounts to be determined at trial.

H. Order Defendant Employer to pay Kellie Portman punitive damages for its malicious and reckless conduct described in paragraphs 7, 8 , 9 and 10 above, in amounts to be determined at trial.

I. Grant such further relief as the Court deems necessary and proper in the public interest.

J. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

        JAMES L. LEE
        Deputy General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel
        U.S. EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION
        1801 L. Street, NW
        Washington, DC 20507

        */s/ Jacqueline H. McNair*
        JACQUELINE H. MCNAIR
        Regional Attorney

        */s/ Judith A. O'Boyle*
        JUDITH A. O'BOYLE
        Supervisory Trial Attorney

        */s/ Woody Anglade*
        WOODY ANGLADE
        Trial Attorney
        NJ 022702000
        EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION
        Philadelphia District Office
        The Bourse Building
        21 S. 5th Street, Suite 400
        Philadelphia, PA 19106
        Telephone (215) 440-2814